**Helen L. Fitzpatrick (Pro Hac Vice pending)**
**Antima Chakraborty (Pro Hac Vice pending)**
**CIPRIANI & WERNER PC**
**450 Sentry Parkway - Suite 200**
**Blue Bell, PA 19422**
**Telephone: (610) 567-0700**

**Clayton T. Fielder KS Bar #21049**
**Michaela L. Webb KS Bar #29401**
**Hennessy & Roach, P.C.**
**10801 Mastin Blvd., Suite 120**
**Overland Park, KS 66210**
**Telephone: 913-221-0740**

**Attorneys for Plaintiff,**
**Dodson International**

## UNITED STATES DISTRICT COURT

## DISTRICT OF KANSAS

| | |
|---|---|
| **DODSON INTERNATIONAL PARTS INC.** | Case No. 2:24-cv-2392 |
| 2155 Vermont Rd. | |
| Rantoul, KS 66079 | |
| | |
| Plaintiff, | |
| | |
| v. | **ACTION FILED:** |
| | |
| **NETWORK SOLUTIONS, LLC** | **FIRST AMENDED COMPLAINT** |
| 12808 Gran Bay Parkway West | |
| Jacksonville Florida 32258 | |
| | |
| **NEWFOLD DIGITAL, INC.** | |
| 5335 Gate Parkway | |
| Jacksonville, Florida 32256 | |
| | |
| **WEB.COM GROUP, INC.** | |
| 5335 Gate Parkway | |
| Jacksonville, Florida 32256 | |
| | |
| **ENOM, LLC** | |
| 251 Little Falls Drive, | |
| Wilmington, Delaware 19808 | |
| Defendants. | |

Plaintiff Dodson International Parts Inc. (hereinafter referred to as "Plaintiff" or "Dodson"), by and through their undersigned counsel, Cipriani & Werner PC, hereby initiates this action against above-captioned Defendants (hereinafter referred to as "Defendants"), for equitable relief. In support thereof, Plaintiff allege the following:

## PRELIMINARY STATEMENT

1.      Plaintiff is a premium parts supplier for Bizjet, Turbo-Prop, and general aviation aircraft parts.

2.      Plaintiff is the sole lawful and proper owner of the domain name www.dodson.com ("the Domain"). The Domain was purchased from Network Solutions, a subsidiary of Newfold Digital, Inc., Web.com Group, Inc., on or about September 1995.

3.      A domain or domain name is a text string that maps to an IP address and allows users to access a given website. Simply put, a domain name is similar to a home address that lets users know where to find a location on the internet.

4.      On or about July 15, 2024, Plaintiff's domain was hijacked and stolen by unknown cybercriminals, causing Plaintiff to lose control of their lawfully owned Domain.

5.      Domain hijacking refers to the criminal act of changing the registration of a domain name without permission of the domain's lawful owner.

6.      Generally, domain hijacking is the result of an unauthorized access to a domain registrar or by social engineering- simply trickery by which a criminal actor impersonates an owner or agent of a given domain in order to convince the registrar to transfer the domain.

7.      Once a domain has been hijacked by a third-party, the ability of the domain owner to recover the domain depends almost entirely upon the assistance of the domain registrar.

8.     Losing control of a commercial domain can cause its holder to experience devastating losses including financial damages, reputational harm, regulatory enforcement exposure, and other non-economic damages.

9.     It is one such loss, and Defendant's apparent refusal to rectify a situation within its control, that underlies this action.

## THE PARTIES

10.     Plaintiff Dodson International Parts, Inc. is a Kansas corporation, incorporated under the laws of Kansas, with its principal place of business located at 2155 Vermont Rd. Rantoul, KS 66079.

11.     Plaintiff's domain name was registered through Network Solutions, LLC, a Delaware limited liability company, with its principal office or place of business at 12808 Gran Bay Parkway West, Jacksonville, Florida 32258.

12.     Network Solutions, LLC is a limited liability company, with its corporate office located at 12808 Gran Bay Park, West, Jacksonville, FL 32258.

13.     According to its website, Network Solutions "is an American-based technology company and a subsidiary of Web.com, the 4th largest .com domain name registrar with over 6.7 million registrations as of August 2018." *See* Network Solutions' website at the following link: https://www.networksolutions.com/.

14.     Network Solutions is the entity through which the domain name WWW.DODSON.COM was first created.

15.     The *sole* member of Network Solutions, LLC is Net Sol Parent, LLC, which has a registered business address of 1386 Sunrise Valley Drive, Suite 300, Herndon, VA 20171 and is wholly owned by Web.com

16.     Net Sol Parent, LLC, in turn, is a limited liability company whose **sole member is Web.com Group, Inc**.

17.     Web.com is a corporation, incorporated under the laws of Delaware, with a principal place of business 5335 Gate Parkway, Jacksonville, Florida 32256.

18.     According to its website, Web.com "is an American dot-com company that provides a website builder, along with website hosting, domain name registration, web development, and various digital marketing services."  *See* Web.com's website at the following link: https://www.web.com/.

19.      Newfold Digital Inc. is a Delaware corporation with its principal place of business at 5335 Gate Parkway, Jacksonville, Florida 32256.

20.     According to its website, Newfold "is a leading web presence solutions provider serving millions of small-to-medium businesses globally." *See* Newfold's website at the following link: https://newfold.com/.

21.     Upon information and belief, Newfold is the parent organization of Web.com Group, Inc. ("Web.com").

22.     Defendant Enom, LLC is a Delaware limited liability company, with a registered agent Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808, wholly owned by Tucows, Inc.

23.     Tucows, Inc. is a corporation incorporated under the laws of Pennsylvania, with a principal place of business of 96 Mowat Avenue, Ontario, CA M6K3M1.

**JURISDICTION AND VENUE**

24.     This Court has jurisdiction over this matter because Plaintiff enjoys diversity of citizenship from Defendants and the amount in controversy is in excess of $75,000 under 28 U.S.C. § 1332.

25.     Venue is proper in the District of Kansas as Plaintiff has its principal place of business in the District of Kansas, where the injury occurred.

**FACTUAL ALLEGATIONS**

26.     Plaintiff brings this action to recover access and control over their commercial Domain Name: www.dodson.com.

27.     Plaintiff relies on the www.dodson.com domain to acquire leads and new customers for itself and its many clients, including critical financial and commercial information.

28.     The Dodson.com domain contains confidential information contained in the email address access of financial records, passwords, and customer information.

29.     On or about July 17, 2024, Plaintiff learned that the domain www.dodson.com was fraudulently transferred from Network Solutions to Enom.

30.     The threat actor edited all of the DNS records, and thus, emails sent to xxx@dodson.com were being intercepted by the threat actor at email address UVIP112@gmail.com.

31.     On that date, Plaintiff's representative contacted Network Solutions Support by telephone, requesting intervention on Plaintiff's behalf, to which Network Solutions responded acknowledging the fraudulent transfer. A copy of this initial email response from Network Solutions are attached hereto as **Exhibit A**.

32.     On that date, Plaintiff's representative contacted Enom Support requesting intervention on Plaintiff's behalf, stating "our domain was fraudulently transferred" and that this

5

was "an INCREDIBLY urgent matter." Enom responded acknowledging the fraudulent transfer—"[w]e are currently working with Network Solutions to have the domain name Dodson.com returned." *See* Enom Initial Email **Exhibit B**

33.     Following this initial email, subsequent emails were exchanged on July 17, 2024 where Enom did not provide any support or updates.  A copy of this request and its response is attached hereto as **Exhibit B.**

34.     For the next several days, Plaintiff sought information from Enom and Network Solutions, to no avail.

35.     On July 17, Plaintiff implored ENOM for an update on their request for return of their domain, informing Enom that Plaintiff was "dead in the water" without domain access and Plaintiff would "really appreciate an update ASAP." [Email: [Tucows Inc - Compliance] Re: Domain Hijacked. 7/16 -7/18, attached hereto as **Exhibit C**.  Enom responded only that they were "still waiting on some required documents from Network Solutions." *Id.*

36.     Plaintiff then went back to Network Solutions to seek an update, pleading: "[c]an I please get an update on [the domain return request] right away??!!? We have no access to company emails or a website. It is crippling us." [Email: Re: Network Solutions Customer Support [S-2578945] 7/17] attached hereto as **Exhibit D.**

37.     Network Solutions provided Plaintiff with similar delay tactics, stating only that "[w]e're currently working with the registrar to address this unauthorized transfer.  Once we have an update, we will provide an update as soon as possible." *Id.*

38.     Plaintiff went back to Enom on July 18, pleading with ENOM for assistance in getting their domain back, stating "we are without email and our website has been hijacked.  Email is integral to our companies' operation. I am asking for any help you can provide, please!" and

offering to provide any documentation Enom required to speed up the process. [[Tucows Inc - Compliance] Re: Domain Hijacked. 7/17-7/18, attached hereto as **Exhibit C.**

39.     Enom provided no information, stating only "[a]s stated previously, we are working directly with Network Solutions regarding this matter.  They are your representative in this matter. If you require updates, please contact them. If documentation is required, they will ask you for it." *Id.*  Plaintiff followed-up with Enom on July 18, 19, and 22 without hearing anything from ENOM. *See* [[Tucows Inc - Compliance] Re: Domain Hijacked, attached hereto as **Exhibit C.**

40.     It wasn't until July 23, that Enom finally responded, simply sending Plaintiff back to Networks Solutions: "Network Solutions is your registrar, you will have to work with them regarding this matter. We informed Network Solutions of this as well previously and are unable to say why they keep sending you to us." *Id.* **Exhibit E.**

41.     Meanwhile, Plaintiff tried to get assistance from Network Solutions to no avail.

42.     On July 18, Network Solutions responded with "We are working directly with the registrars in regard to this domain name to get transferred back. When we have an update, we will provide as soon as possible." [Email: Re: Network Solutions Customer Support [S-2578945] attached hereto as **Exhibit F.**

43.     Plaintiff asked for an estimated time, and Network Solutions responded: "the process of undoing a transfer is not quick and could take time.  For immediate actions, you can file a court order . . . ." *Id.*  Plaintiff responded: "I guess I just don't understand. Enom knows it was fraudulently transferred. Network Solutions knows it was fraudulently transferred.  So if we know all that, what is the hold up on getting it back to Network Solutions?" *Id.*  Network Solutions did not respond again until July 19 and provided no new information: "We are working with the gaining registrar in an attempt to reverse the transfer of Dodson.com. The process to retrieve a

domain can take some time and is not a guarantee.  It is recommended that you contact your local law enforcement agency or file a dispute with UDRP." *Id*

44.     Failing to receive any useful information from Network Solutions, Plaintiff sought information from *Newfold* on July 23 by email, stating: "I have gone through all of the proper channels at [Network Solutions] and Enom and I am just not getting anywhere. As you can imagine, a company without access to its webpage and email is just devastating. We are coming up on a week of not having access. Is there anything you can do to help us? I am literally begging you for help!" [Email Re: Network Solutions Customer Support [S-2578945] 7/23 attached hereto as **Exhibit G**.

45.     Newfold stated that they were forwarding the email to the Domain Security/Abuse Department and requested that they "reach out to [Plaintiff] directly" and informed Plaintiff that "[w]hen this type of situation occurs, there is a process that needs to be followed." *Id.*

46.     Plaintiff has not been contacted by Newfold's Abuse Department.

47.     Since Plaintiff's domain was stolen by cybercriminals, Plaintiff has sent dozens of emails and made several phone calls to Defendants trying to get its domain rightfully returned. Plaintiff has only been met with delay tactics and stonewalling.  Defendants have left Plaintiff with no choice but to follow their advice and file for a court order.

48.     On August 1, 2024, Counsel for Dodson International contacted ENOM via email requesting cooperation and for ENOM to provide documents requested by Network Solutions. *See* Email Exhibit **H.**

49.     This Correspondence requested cooperation to return domain to Plaintiff. *See* Correspondence **Exhibit I.**

50.     ENOM never responded.

51.     On August 1, 2024, Counsel for Dodson International contacted Network Solution, requesting assistance in gaining access and recovery of their domain. *See* **Exhibit J.**

52.     This Correspondence requested cooperation to return domain to Plaintiff. *See* **Exhibit K.**

53.     Network Solutions responded on August 5, 2024, stating, "Unfortunately, eNom has complete control of the domain, and we are awaiting responses from eNom and IONOS to find out the documentation required to reverse the transfer." See Response **Exhibit L.**

54.     Counsel, hoping for cooperation, stated that, "Kindly provide the documents relevant to our client and we will coordinate with ENOM. Alternatively, please provide relevant documents to ENOM with us cc:d, immediately. In addition, please provide a particular account specialist email address with whom we can start a chain communication with ENOM. Finally, please provide your most recent communication with IONOS. **Exhibit M.**

55.     Network Solutions did not provide such information, despite Counsel's willingness to coordinate cooperation.

56.      Absent Defendants' intervention, the hackers will continue to access Plaintiff's confidential information accessible through their domain.

57.     Absent Defendants' intervention, Plaintiff will continue to experience business interruption as a result of not having access to their domain.

58.     As a result, Plaintiff does not have control over their own domain and confidential information.

59.     As a direct and proximate result of Defendants' inaction, Plaintiff has lost significant revenue.

60.     As a direct and proximate result of Defendants' inaction, Plaintiff will continue to

lose revenue and business opportunities in the future.

61.     As a direct and proximate result of Defendants' inaction, Plaintiff has lost meaningful, beneficial, and profitable relationships with customers.

62.     As a direct and proximate result of Defendants' inaction, Plaintiff has and will continue to suffer profound damage to its professional reputation.

## COUNT I – BREACH OF CONTRACT

### Dodson International v. Network Solutions; Newfold Digital

63.     Plaintiff hereby incorporates the preceding paragraphs by reference as though fully set forth at length herein.

64.     Plaintiff entered into a commercial relationship with Network Solutions.

65.     Network Solutions' website provides a link to view its Privacy Notice, which directly links to Newfold Digital's Privacy Notice at https://newfold.com/privacy-center/privacy.

66.     In fact, as seen above, *supra,* Newfold Digital responded on behalf of Network Solutions on July 23, 2024, advising that Plaintiff's request for assistance will be forward to the Abuse Department, thus acting as its agent/alter-ego.

67.     Pursuant to the Privacy Policy linked above, Defendant corporations ("Newfold Digital and its subsidiaries") assure its customers, Plaintiff, "we will take appropriate technical and organizational measures to safeguard your personal information against loss, ***theft and unauthorized use***, access or modification."

68.     This link even provides information on how to report any misuse, which the Plaintiff's utilized via reporting the theft immediately via email to both Network Solutions and Newfold Digital.

69.     Most telling is Defendant Network Solutions and Newfold Digital's

acknowledgment through above correspondence offering to provide assistance—yet never doing so, thus breaching their contractual terms to, "take appropriate technical and organizational measures." Defendant Network Solutions and Newfold Digital have done nothing.

70.   As a result of Defendants' willful inaction, Plaintiff has not regained access to their account.

71.   As a result of Defendants' failure, Plaintiff has suffered and will continue to suffer

    a.    Past lost revenue;
    b.    Future lost revenue;
    c.    Past loss of professional opportunities;
    d.    Loss of future professional opportunities;
    e.    Loss of professional reputation; and,
    f.    Loss of confidential information;

WHEREFORE, Plaintiff, respectfully requests that this Honorable Court enter an Order directing Network Solutions and ENOM to facilitate the return of Plaintiff's domain by:

    a.   ENOM to provide access to our domain in our system.  The domain on there is: daniel_120671.
    b.   ENOM to put in Dodson's MX records. This will restore emails to dodson.com, which can be done immediately without granting access to the domain as a sign of good faith, while we work to regain control of dodson.com
    c.   ENOM to switch the domain to their own Nameservers (instead of the current settings pointing to Cloudflare Nameservers).
    d.   ENOM to maintain an open channel of communication with Plaintiff regarding any information related to this domain that is required to regain proper access.
    e.   ENOM to provide a list of documents that they require from Network Solutions for Plaintiff to regain access.
    f.   Network Solutions and its subsidiaries to provide these listed documents to ENOM
    g.   Network Solutions and its subsidiaries to maintain an open channel of communication with Plaintiff regarding any information related to this domain that is required to regain proper access.
    h.   Network Solutions and its subsidiaries to relinquish control to Plaintiff, the proper owner of the domain, and give them access to this domain, while still being hosted by ENOM.
    i.   Award damages in excess of $75,000 for losses incurred as a result of the fraudulent transfer.

## COUNT II – BREACH OF CONTRACT

### Dodson International v. Network Solutions

72.     Plaintiff hereby incorporates the preceding paragraphs by reference as though fully set forth at length herein.

73.     As set forth above, Plaintiff entered into an agreement with Defendants to use its platform as though fully set forth as length above.

74.     In doing so, Network Solutions and Plaintiff entered into an agreement, Network Solutions' Service Agreement, incorporated herein, and attached hereto as **Exhibit "N."**

75.     This Agreement provides that "**Network Solutions is** an accredited **registrar** with the Internet Corporation for Assigned Names and Numbers ("ICANN") and incorporates into the Agreement a link to ICANN rights and responsibilities, http://www.icann.org/en/registrars/registrant-rights-responsibilities-en.htm.

76.     A simple review of the Rights and Responsibilities demonstrates that "A Registrar has to agree that it will take reasonable precautions to protect the Registered Name Holder's data from "loss, misuse, unauthorized access or disclosure, alteration, or destruction."

77.     Network Solutions breached its contract by failing to take such reasonable precautions to prevent the theft of domain and unauthorized transfer.

78.     ICANN provides that a Registrar, when a domain name is requested to be transferred (measured from dates of creation or earlier transfer) may take measures providing of required authorization and documentation for Registrar review, prior to transfer.

79.     Plaintiff has been a customer of Network Solutions since 1995 and had never once requested a transfer, and Network Solutions failed to take any measures of question or verify this fraudulent transfer.

80.     Moreover, the ICANN terms provide that The Registrar of Record may deny a transfer in instances of fraud.

81.     Plaintiff immediately notified Network Solutions of the fraudulent activity, yet Network Solutions failed to take any measures whatsoever.

82.     Shockingly, Network Solutions responded to Plaintiff that they are waiting on paperwork from ENOM to fix the issue, while failing to request or verify the transfers in the first place.

83.     As a result of Defendants' willful inaction, Plaintiff has not regained access to their account.

84.     As a result of Defendants' failure, Plaintiff has suffered and will continue to suffer

    a.     Past lost revenue;
    b.     Future lost revenue;
    c.     Past loss of professional opportunities;
    d.     Loss of future professional opportunities;
    e.     Loss of professional reputation; and,
    f.     Loss of confidential information;

WHEREFORE, Plaintiff, respectfully requests that this Honorable Court enter an Order directing Network Solutions and ENOM to facilitate the return of Plaintiff's domain by:

    a.    ENOM to provide access to our domain in our system.  The domain on there is: daniel_120671.
    b.    ENOM to put in Dodson's MX records. This will restore emails to dodson.com, which can be done immediately without granting access to the domain as a sign of good faith, while we work to regain control of dodson.com
    c.    ENOM to switch the domain to their own Nameservers (instead of the current settings pointing to Cloudflare Nameservers).
    d.    ENOM to maintain an open channel of communication with Plaintiff regarding any information related to this domain that is required to regain proper access.
    e.    ENOM to provide a list of documents that they require from Network Solutions for Plaintiff to regain access.
    f.    Network Solutions and its subsidiaries to provide these listed documents to

ENOM

g.  Network Solutions and its subsidiaries to maintain an open channel of
    communication with Plaintiff regarding any information related to this domain
    that is required to regain proper access.

h.  Network Solutions and its subsidiaries to relinquish control to Plaintiff, the proper
    owner of the domain, and give them access to this domain, while still being
    hosted by ENOM.

i.  Award damages in excess of $75,000 for losses incurred as a result of the
    fraudulent transfer.

## COUNT III – BREACH OF IMPLIED CONTRACT
### In the Alternative to Count I
### Dodson International v. Network Solutions; Newfold Digital

85.     Plaintiff hereby incorporates by reference the preceding paragraphs by reference
as though fully set forth at length herein.

86.     To prevail upon a claim of breach of implied contract, a plaintiff must prove: (1)
conduct; (2) the plaintiff's performance; (3) the defendant's breach; and (4) the damages caused
to Plaintiff as a result of the breach. *Anglemyer v. Hamilton Cnty. Hosp. Carter*, No. 81,417, 2000
WL 36745791, at *4 (Kan. Ct. App. Feb. 11, 2000).

87.     As set forth above, Plaintiff entered into an agreement with Defendants to use its
platform for commercial purposes.

88.     On the Network Solutions website, Network Solutions links to Newfold Digital and
its subsidiaries acknowledge that, as part of their services they provide website security and offers
a link where a customer may request Help.[1]

89.     Of course, as has been outlined, *supra*, continued communications with Defendants
indicate Defendants' acknowledgment to assist, yet they have failed to do so, thus breaching their
contract.

90.     Plaintiff entrusted its confidential information to Defendants by use of its domain.
Defendants failed to return Plaintiff's access to its domain.

14

91.     As a result of Defendants' willful inaction, Defendants failed to maintain the confidential information.

92.     Implicit in these agreements were Defendants implicit promise that Plaintiff would have exclusive use and control of its domain for professional, commercial purposes.

93.     Plaintiff has lost access and control to their domain, thereby frustrating the goal of their contract with Defendants.

94.     Restoration of access to Plaintiff's domain is within the power of Network Solutions and Newfold Digital.

95.     Plaintiff promptly notified Defendants of the hacker's seizure of its domain and promptly complied with Defendants' requests in order to facilitate the return of its domain.

96.     Despite Plaintiff's efforts, Defendants have inexplicably failed to restore its domain.

97.     As a direct and proximate result of Defendants' breach of its implied contract with Plaintiff, Plaintiff has suffered and will continue to suffer as follows:

     a.  Past lost revenue;
     b.  Future lost revenue;
     c.  Past loss of professional opportunities;
     d.  Loss of future professional opportunities;
     e.  Loss of professional reputation; and,
     f.  Loss of confidential information;

98.     Pursuant to 28. U.S.C. 2201, a district court may enter an order for injunctive relief for any case or controversy over which it has jurisdiction.

WHEREFORE, Plaintiff, respectfully requests that this Honorable Court enter an Order directing Network Solutions and ENOM to facilitate the return of Plaintiff's domain by:

     a.   ENOM to provide access to our domain in our system.  The domain on there is: daniel_120671.
     b.  ENOM to put in Dodson's MX records. This will restore emails to dodson.com,

which can be done immediately without granting access to the domain as a sign of good faith, while we work to regain control of dodson.com

c. ENOM to switch the domain to their own Nameservers (instead of the current settings pointing to Cloudflare Nameservers).

d. ENOM to maintain an open channel of communication with Plaintiff regarding any information related to this domain that is required to regain proper access.

e. ENOM to provide a list of documents that they require from Network Solutions for Plaintiff to regain access.

f. Network Solutions and its subsidiaries to provide these listed documents to ENOM

g. Network Solutions and its subsidiaries to maintain an open channel of communication with Plaintiff regarding any information related to this domain that is required to regain proper access.

h. Network Solutions and its subsidiaries to relinquish control to Plaintiff, the proper owner of the domain, and give them access to this domain, while still being hosted by ENOM.

i. Award damages in excess of $75,000 for losses incurred as a result of the fraudulent transfer.

## COUNT IV – UNJUST ENRICHMENT
### Dodson International v. eNOM

99.  Plaintiff hereby incorporates by reference the preceding paragraphs by reference as though fully set forth at length herein.

100.  The basic elements of a claim based on a theory of unjust enrichment are threefold: (1) a benefit conferred; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it to retain the benefit. *J.W. Thompson Co. v. Welles Prod. Corp.,* 243 Kan. 503, 512, 758 P.2d 738, 745 (1988).

101.  eNOM now has control, management and access over the domain, yet Plaintiff has received nothing in return.

102.  Control, management, and access over the domain constitutes monetary enrichment of eNOM.

103.  eNOM has acknowledged that the domain was fraudulently transferred and does

16

not belong under their control.

104.     Despite its acceptance of this monetary benefit and the unwarranted retention of the

same, eNom has failed to act.

105.     Indeed, eNOM baited Plaintiff to file for court intervention should Plaintiff wish to

see any action on their part.

106.     As a result of Defendants' failure, Plaintiff has suffered and will continue to suffer

    a.     Past lost revenue;
    b.     Future lost revenue;
    c.     Past loss of professional opportunities;
    d.     Loss of future professional opportunities;
    e.     Loss of professional reputation; and,
    f.     Loss of confidential information;

WHEREFORE, Plaintiff, respectfully requests that this Honorable Court enter an Order

directing Network Solutions and ENOM to facilitate the return of Plaintiff's domain by:

a.   ENOM to provide access to our domain in our system.  The domain on there is: daniel_120671.

b.   ENOM to put in Dodson's MX records. This will restore emails to dodson.com, which can be done immediately without granting access to the domain as a sign of good faith, while we work to regain control of dodson.com

c.   ENOM to switch the domain to their own Nameservers (instead of the current settings pointing to Cloudflare Nameservers).

d.   ENOM to maintain an open channel of communication with Plaintiff regarding any information related to this domain that is required to regain proper access.

e.   ENOM to provide a list of documents that they require from Network Solutions for Plaintiff to regain access.

f.   Network Solutions and its subsidiaries to provide these listed documents to ENOM

g.   Network Solutions and its subsidiaries to maintain an open channel of communication with Plaintiff regarding any information related to this domain that is required to regain proper access.

h.   Network Solutions and its subsidiaries to relinquish control to Plaintiff, the proper owner of the domain, and give them access to this domain, while still being hosted by ENOM.

i.   Award damages in excess of $75,000 for losses incurred as a result of the fraudulent transfer.

### COUNT V – NEGLIGENCE
### Dodson International v. Network Solutions; Newfold Digital; Web.com

107.    Plaintiff hereby incorporates by reference the preceding paragraphs by reference as though fully set forth at length herein.

108.    Newfold Digital, Web.com Group, and Network Solutions ("the Network Defendants"), as the creators and managers of the DODSON.COM domain name, owed a duty of care to Plaintiff, as the true owner of the domain.

109.    Plaintiff, through Plaintiff's attorney, informed "the Network Defendants" that Plaintiff was no longer the owners of the domain name due to fraudulent transfer.

110.    However, the Network Defendants, even after acknowledging their ability to assist, failed to do so.

111.    In this failure, Network Defendants breached their duty to the Plaintiff.

112.    But for the Network Defendants' inaction and failure, Plaintiff could have retained and regained access to its domain.

113.    As a result of Defendants' failure, Plaintiff has suffered and will continue to suffer

    a.    Past lost revenue;
    b.    Future lost revenue;
    c.    Past loss of professional opportunities;
    d.    Loss of future professional opportunities;
    e.    Loss of professional reputation; and,
    f.    Loss of confidential information;

WHEREFORE, Plaintiff, respectfully requests that this Honorable Court enter an Order directing Network Solutions and ENOM to facilitate the return of Plaintiff's domain by:

    a.     ENOM to provide access to our domain in our system.  The domain on there is: daniel_120671.
    b.    ENOM to put in Dodson's MX records. This will restore emails to dodson.com, which can be done immediately without granting access to the domain as a sign of good faith, while we work to regain control of dodson.com
    c.    ENOM to switch the domain to their own Nameservers (instead of the current settings pointing to Cloudflare Nameservers).
    d.    ENOM to maintain an open channel of communication with Plaintiff regarding any information related to this domain that is required to regain proper access.
    e.    ENOM to provide a list of documents that they require from Network Solutions for

Plaintiff to regain access.

f.  Network Solutions and its subsidiaries to provide these listed documents to ENOM
g.  Network Solutions and its subsidiaries to maintain an open channel of communication with Plaintiff regarding any information related to this domain that is required to regain proper access.
h.  Network Solutions and its subsidiaries to relinquish control to Plaintiff, the proper owner of the domain, and give them access to this domain, while still being hosted by ENOM.
i.  Award damages in excess of $75,000 for losses incurred as a result of the fraudulent transfer.

## COUNT VI – NEGLIGENCE
### Dodson International v. eNOM

114.   Plaintiff hereby incorporates by reference the preceding paragraphs by reference as though fully set forth at length herein.

115.   A duty of care was established between Plaintiff and eNOM when eNOM responded acknowledging the fraudulent transfer—"[w]e are currently working with Network Solutions to have the domain name Dodson.com returned," and took on the duty to assist by stating, and that they are "still waiting on documents from Network Solutions."

116.   eNOM, having actively taken on a duty of care to Plaintiff by their own words and actions, then breached this duty by simply doing nothing whatsoever to assist Plaintiff.

117.   eNOM further assumed a duty of care to the rightful owner of the Domain by accepting transfer of the same to their custody and control.

118.   This duty of care includes professional standards as set forth by ICANN including the obligation to "[a]ct in a reasonable, objective, and informed manner when participating in policy development and decision-making processes. This includes …exercising independent judgment based solely on what is in the overall best interest of Internet users and the stability and

security of the Internet's system of unique identifiers, irrespective of personal interests and the

interests of the entity to which an individual might owe their appointment.[1]"

119.   It is within eNOM's control to return domain and access to the Plaintiff, without

eNOM's assistance, Plaintiff is stranded.

120.   eNOM breached its duty of care to Plaintiff.

121.   But for the eNOM's inaction and failure, Plaintiff could have retained and regained

access to its domain.

122.   As a result of Defendant's failure, Plaintiff has suffered and will continue to suffer

     a.     Past lost revenue;
     b.     Future lost revenue;
     c.     Past loss of professional opportunities;
     d.     Loss of future professional opportunities;
     e.     Loss of professional reputation; and,
     f.     Loss of confidential information;

WHEREFORE, Plaintiff, respectfully requests that this Honorable Court enter an Order

directing Network Solutions and ENOM to facilitate the return of Plaintiff's domain by:

a.  ENOM to provide access to our domain in our system.  The domain on there is: daniel_120671.
b.  ENOM to put in Dodson's MX records. This will restore emails to dodson.com, which can be done immediately without granting access to the domain as a sign of good faith, while we work to regain control of dodson.com
c.  ENOM to switch the domain to their own Nameservers (instead of the current settings pointing to Cloudflare Nameservers).
d.  ENOM to maintain an open channel of communication with Plaintiff regarding any information related to this domain that is required to regain proper access.
e.  ENOM to provide a list of documents that they require from Network Solutions for Plaintiff to regain access.
f.  Network Solutions and its subsidiaries to provide these listed documents to ENOM
g.  Network Solutions and its subsidiaries to maintain an open channel of communication with Plaintiff regarding any information related to this domain that is required to regain proper access.
h.  Network Solutions and its subsidiaries to relinquish control to Plaintiff, the proper

---

[1] https://www.icann.org/resources/pages/expected-standards-2016-06-28-en (last accessed August 21, 2024).

owner of the domain, and give them access to this domain, while still being hosted by ENOM.

i. Award damages in excess of $75,000 for losses incurred as a result of the fraudulent transfer.

### COUNT VII – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
**Dodson International v. Network Solutions; Newfold Digital**

123.    Plaintiff hereby incorporates by reference the preceding paragraphs by reference as though fully set forth at length herein.

124.    The duty of good faith and fair dealing "is implied in a contract, <u>and conduct</u> departing from that duty is a breach of a contractual obligation." *Pizza Mgmt., Inc. v. Pizza Hut, Inc.*, 737 F. Supp. 1154, 1167 (D. Kan. 1990).

125.    A breach of this duty "occurs when a party's actions are commercially unreasonable." *Id.* at 1179 (citing *Larese v. Creamland Dairies, Inc.*, 767 F.2d 716, 717-18 (10th Cir. 1985)). "Parties shall not 'intentionally and purposely do anything to prevent the other party from carrying out his part of the agreement or do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Daniels v. Army National Bank*, 249 Kan. 654, 658, 822 P.2d 39, 43 (Kan. 1991) (quoting *Bonanza, Inc. v. McLean*, 242 Kan. 209, 222, 747 P.2d 792 (1987)).

126.    As detailed above, Plaintiff entered into express or alternatively implied contracts with Network and Newfold Defendants to utilize its platform for professional and commercial purposes.

127.    Defendants' failure to timely return control of the subject accounts to Plaintiff despite Plaintiff's good faith efforts have deprived Plaintiff of the benefit of its bargain.

128.    As a result of Defendants' conduct and inaction, Plaintiff has suffered and will

continue to suffer

      a.  Past lost revenue;
      b.  Future lost revenue;
      c.  Past loss of professional opportunities;
      d.  Loss of future professional opportunities;
      e.  Loss of professional reputation; and,
      f.  Loss of confidential information;

129.    Pursuant to 28. U.S.C. 2201, a district court may enter an order for injunctive

relief for any case or controversy over which it has jurisdiction.

WHEREFORE, Plaintiff, respectfully requests that this Honorable Court enter an Order

directing Network Solutions and ENOM to facilitate the return of Plaintiff's domain by:

      a.  ENOM to provide access to our domain in our system.  The domain on there is: daniel_120671.
      b.  ENOM to put in Dodson's MX records. This will restore emails to dodson.com, which can be done immediately without granting access to the domain as a sign of good faith, while we work to regain control of dodson.com
      c.  ENOM to switch the domain to their own Nameservers (instead of the current settings pointing to Cloudflare Nameservers).
      d.  ENOM to maintain an open channel of communication with Plaintiff regarding any information related to this domain that is required to regain proper access.
      e.  ENOM to provide a list of documents that they require from Network Solutions for Plaintiff to regain access.
      f.  Network Solutions and its subsidiaries to provide these listed documents to ENOM
      g.  Network Solutions and its subsidiaries to maintain an open channel of communication with Plaintiff regarding any information related to this domain that is required to regain proper access.
      h.  Network Solutions and its subsidiaries to relinquish control to Plaintiff, the proper owner of the domain, and give them access to this domain, while still being hosted by ENOM.
      i.  Award damages in excess of $75,000 for losses incurred as a result of the fraudulent transfer.

Respectfully Submitted,

Dated: _____

By:   /s/ *Antima Chakraborty*  _____

        Antima Chakraborty
        (*Pro Hac Vice* forthcoming)
        **CIPRIANI & WERNER PC**
        450 Sentry Parkway - Suite 200
        Blue Bell, PA 19422
        Telephone: (610) 567-0700
        *Attorney for Dodson International*


By:   /s/ *Clayton T. Fielder*  _____
        Clayton T.  Fielder KS Bar #21049
        Michaela L. Webb KS Bar #29401
        Hennessy & Roach, P.C.
        10801 Mastin Blvd., Suite 120
        Overland Park, KS 66210
        Telephone: 913-221-0740
        Email: cfielder@hennessyroach.com
              mwebb@hennessyroach.com
        *Attorneys for Dodson International*